**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **YAN WANG,**<br><br>                    **Plaintiff,**<br><br>**v.**<br><br>**THE UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE A,**<br><br>                    **Defendants.** | **Case No. 1:25-cv-2292 (LMB/WBP)** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY
OF A TEMPORARY RESTRAINING ORDER, AND
ASSET RESTRAINING ORDER**

Plaintiff Yan Wang ("Plaintiff"), by counsel and pursuant to 17 U.S.C. § 502 and Fed. R.

Civ. P. 65, submits this Memorandum of Law in Support of its *Ex Parte* Motion for a Temporary

Restraining Order, including a temporary asset restraint for all activity associated with the

unauthorized use of Plaintiff's copyrighted works in commerce in the United States by the

defendants identified in Schedule A in the Verified Complaint (the "TRO Motion").

**I.    <u>Introduction and Summary of Action</u>**

This action seeks to stop the infringement of, and unauthorized use of, Plaintiff's

copyrighted works by Defendants as identified on Schedule A of the Verified Complaint

(collectively, the "Defendants") to sell products through online platforms including Amazon.com.

In the Verified Complaint, Plaintiff filed against Defendants for copyright infringement of a

registered copyright.  Compl. ¶ 1. Plaintiff is the owner of the United States Copyright Registration

explained and produced in the Complaint. [Docket No. 1] ("the Copyright Registration"). *Id.* ¶¶ 1-

2, Exhibit 1.  The Copyright Registration protects the creative works of Plaintiff's copyrighted

images *Id*. ¶ 2, Exhibit A. Plaintiff's commercial products are sold in the United States via online platforms since 2021 and this product quickly gained traction, achieving sales of approximately 7000 units per month based on its unique design and positive customer reviews. *Id*. ¶ 13-14.

As stated in the Verified Complaint, the Defendants are importing, promoting, advertising, marketing, distributing, offering for sale, and selling Accused Products through various Internet Stores, namely Amazon.com, that incorporate Plaintiff's copyrighted works, and Defendants advertise their products using copies of Plaintiff's work. *Id*. ¶¶ 5, 6, 15, 23, 26, Exhibit C . The Defendants create Internet Stores and product listings for products that incorporated Plaintiff's copyrighted works, all the while actually selling low-quality, unlicensed, infringing products packaged to unknowing consumers.  *Id*. ¶¶ 6, 27. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope of their copying operations. *Id*. ¶¶ 27. Plaintiff is forced to file these actions to combat Defendants' illegal use of Plaintiff's copyrighted works, as well as to protect unknowing consumers from purchasing low-quality knock-off copies over the Internet. *Id*. ¶ 27.

As is the case with many successful products, after Plaintiff's product became a market success, defendants swarmed the market with copycat versions without Plaintiff's authorization or express written permission. *Id*. ¶¶ 16, 18.

Defendants directly target unlawful business activities towards consumers in Virginia and cause harm to Plaintiff's business in the United States and have caused and will continue to cause irreparable injury to Plaintiff. *Id*. ¶ 17. Defendants are knowingly and intentionally importing, promoting, advertising, marketing, retailing, offering for sale, distributing, and selling infringing products within this judicial district and throughout the United States. *Id*. Specifically, Defendants employ the user accounts listed in Schedule A to the Verified

Complaint (the "Infringing Webstores") in conjunction with the online platform Amazon.com to conduct online sales. *Id.* Through their unlawful actions, the Defendants have infringed and are continuing to infringe Plaintiff's copyright rights. *Id*. ¶ 5, 8.

Defendants run sophisticated product copying operations and are doing business with Virginia residents by selling copied and infringing products in connection with Plaintiff's copyrighted works through the Infringing Webstores. *Id*. ¶ 5, 8, 17.

Joinder is proper in this case. The Infringing Webstores share unique identifiers, such as copyrighted elements of the Plaintiff's photographs and products, trade channels, similarities in price, similarities in the description of the goods offered, and similarities of the products offered for sale, thereby establishing a logical relationship between them. *Id*. ¶ 27. Further, Defendants attempt to avoid liability in many instances by going to great lengths to conceal both their identities and the full scope and interworking of their copying operations. *Id*.  Plaintiff is forced to file these actions to combat Defendants' infringement of its copyrights, as well as to protect unknowing consumers from purchasing knock-off products over the Internet. *Id*. Defendants' ongoing unlawful activities are harming and continue to irreparably harm Plaintiff and should be restrained. *Id*. ¶¶ 27, 29, 36.

## II.    <u>Statement of Facts</u>

Plaintiff is a renowned graphic designer and early childhood educator with over eight years of experience in product design and educational content creation. Her work is dedicated to creating innovative learning tools that blend aesthetic appeal to children with pedagogical effectiveness. *Id*. ¶ 12. Since Plaintiff's commercial launch of  her copyrighted product in the United States in 2021, the product quickly gained traction, achieving sales of approximately 7000 units per month based on its unique design and positive customer reviews. *Id*. ¶ 14. The success of Plaintiff's

product is due in large part to Plaintiff's marketing, promotional, and distribution efforts. Plaintiff has made efforts to protect its interests in and to copyrighted works and obtained the Copyright Registration to protect the creative content of the creative designs. No one other than the Plaintiff's licensees are authorized to manufacture, import, export, advertise, create derivative works, offer for sale, or sell any goods utilizing the artistic aspects of the creative designs without the express written permission of the Plaintiff. *Id*. ¶¶ 15-16.

Defendants have fully interactive websites and marketplace listings on various platforms including but not limited to Amazon.com ("Defendant Internet Stores"). Defendants' target consumers in the United States, including the State of Virginia, and has offered to sell and, on information and belief, has sold and continues to sell infringing products that violate Plaintiff's intellectual property rights in the Copyright Registration to consumers within the United States, including the State of Virginia. *Id*. ¶ 17.

Defendants' infringement of the Copyright Registration is demonstrated in Exhibit C to the Complaint [Docket No. 1].

Defendants' actions have caused irreparably damaged, and are continuing to irreparably damage, Plaintiff. *Id*. ¶ 20. Plaintiff has not authorized or licensed any party named in this action to advertise, import, offer to sell, or sell products made according to the copyrighted works of Plaintiff. *Id*. ¶ 21-23.

Plaintiff also concluded that the Infringing Webstores are selling Accused Products based on a visual inspection of the products as they appear on the Infringing Webstores, the price at which the Accused Products are being offered for sale, and because Defendants and the Webstores do not conduct business with Plaintiff and do not have the right or authority to use the Copyright Registration for any reason. *Id*. ¶ 2, 24, 28, Exhibit B.

Defendants facilitate sales of Accused Products by designing the Defendant Webstore listings so that they appear to unknowing consumers to be authorized listings, outlet stores, or wholesalers selling Plaintiff's Products and accept payment in U.S. Dollars. *Id.* ¶ 21.  Defendants are responsible for gaining profits in sales of infringing products using advertising via copies of Plaintiff's copyrighted works.  *Id.* ¶¶ 15, 23.

Due to the nature of Defendants' illegal activities, monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control and damage to Plaintiff's reputation and goodwill. *Id.* ¶¶ 28-29. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Plaintiff's reputation and goodwill by acts of infringement. *Id.* ¶¶ 22, 27-28.  Plaintiff's goodwill and reputation are irreparably damaged when Plaintiff's copyrights are misused on goods not authorized, produced or manufactured by the Plaintiff. *Id.* This leads to brand confidence being damaged, resulting in loss of future sales and market share.  *Id.* The extent of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable. *Id.* ¶ 29.

Defendants' illegal use of the copyright of Plaintiff further irreparably harms Plaintiff because infringers like the Defendants take away Plaintiff's ability to control the nature and quality of illegal Products. *Id.* ¶¶ 27, 29. Loss of quality control over goods bearing or using Plaintiff's copyrighted designs, and, in turn, loss of control over Plaintiff's reputation, is neither calculable nor precisely compensable. Plaintiff is further irreparably damaged due to a loss of exclusivity of his copyrighted works. When infringers use the Copyright Registration without authorization, the exclusivity of Plaintiff's products, as well as Plaintiff's brand reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales. *Id.* ¶ 16, 23.

Tactics used by Defendants to conceal their identities using alias names on Amazon.com and the full scope of their infringing operations make it virtually impossible for Plaintiff to learn Defendants' true identities. *Id*. ¶¶ 4, 6, 27.   Based on previous cases of Webstores that unlawfully use a brand owner's intellectual property rights to sell copied products, when any advance notice of a lawsuit or request for injunctive relief is given to the owner or registrant of a Webstore involved in infringement, the requested relief is rendered ineffective and meaningless, because copyright infringers operate as a proverbial "moving target," beyond the effective reach of rights owners seeking to enforce their rights.

Plaintiff has been unable to uncover the true identities of individuals operating the Defendant stores under aliases since the online platforms do not publish this information to the public. Even if made public, many of these sellers use multiple fictitious names and addresses to regularly create new stores. This is a common practice among online sellers who offer copied products in order to conceal identities so that the sellers can evade enforcement efforts. *Id*. ¶ 4-6.

Irreparable harm by Defendants' activities also comes from the fact that, if not enjoined, the Defendants can abscond with illegally procured funds from the Defendants' accounts, and the funds will be difficult if not impossible to impossible to recover once removed from the United States.  *See* Plaintiff's Motion to Seal Complaint.

Plaintiff will suffer immediate and irreparable injury, loss or damage if infringers are allowed to continue to infringe upon, and profit from, the Copyright Registration. *Id*. ¶¶ 36.

### III. <u>The Court Should Halt Transfers for the Internal Online Accounts Used in Connection with Defendants' Infringing Activities</u>

Under Rule 65(b) of the Federal Rules of Civil Procedure, a court may issue a temporary restraining order without written or oral notice to a defendant where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or

6

damage will result to the movant before the adverse party can be heard in opposition." Fed. R.

Civ. P. 65(b)(1)(A). Here, each of the Defendants fraudulently promote, advertise, offer to sell,

and sell copied infringing goods using the Copyright Registration through the use of the

Infringing Webstores on online sales platforms. The entry of a temporary restraining order is

appropriate because it would immediately enjoin Defendants from benefiting from their

wrongful use of the Copyright Registration and preserve the status quo until such time as a

hearing can be held. *See In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) (recognizing that

*ex parte* temporary restraining orders are "indispensable to the commencement of an action when

it is the sole method of preserving a state of affairs in which the court can provide effective final

relief"); *Microsoft Corp. v. John Does 1- 27*, No. l0-cv-00156-LMB-JFA [Dkt. No. 23] (E.D. Va.

Feb. 22, 2010) (granting an *ex parte* TRO upon finding that the "Court's ability to grant effective

final relief will result from the sale, transfer, or other disposition or concealment by Defendants

of the domains at issue…if the Defendants receive advance notice of this action."); *Dell Inc. v.

Belgium Domains, LLC*, No. 07- 22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007)

(finding *ex parte* relief particularly compelling where infringing activity "is in electronic form

and subject to quick, easy, untraceable destruction by Defendants").

The accounts at Amazon.com and others used by Defendants are internal seller accounts

operated under alias names and held and managed by the platforms in the United States, not

external bank accounts.  The internal seller accounts are where funds due to sales of a seller's

products are deposited and where the platform withdraws commissions and fees therefrom.  A

seller can then move funds out of its seller account to any bank account of its choosing. In the

absence of an *ex parte* temporary restraining order, Defendants will have not only a strong

incentive, but the opportunity to move any assets away from their seller accounts to external

bank accounts outside the jurisdiction of this and other U.S. courts. *See* Plaintiff's Motion to Seal Complaint. Federal courts have recognized that, in circumstances such as these, providing notice to defendants "appears to serve only to render fruitless further prosecution of the action." *See In re Vuitton et Fils S.A*., 606 F.2d 1, 5 (2d Cir. 1979); *Time Warner Enter. Co. v. Doe*, 876 F. Supp. 407, 410-11 (E.D.N.Y. 1994); *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often rendered useless if notice is given to the infringers"). To prevent Defendants from circumventing any relief this Court may provide and maintain the status quo, the Court should grant Plaintiff's *ex parte* motion for a temporary restraining order. Such relief has regularly been granted by this Court, as well as from other U.S. district courts around the country. *See, e.g.,* Order*, Volkswagen Group of America, Inc. v. Unincorporated Ass'ns*, No. 1:19-cv-01574 (E.D. Va. Dec. 20, 2019), ECF No. 21; TRO Order, *Thousand Oaks Barrel Co., LLC v. The Partnerships, etc.*, No. 1:23-cv-1560 (E.D. Va. Nov. 16, 2023) (MSN/LRV), ECF No. 11 (granting TRO directing Amazon.com to freeze all funds involving defendants' accounts); TRO Order*, Thousand Oaks Barrel Co., LLC v. The Partnerships, etc.*, No. 1:23-cv-1563 (E.D. Va. Nov. 16, 2023) (MSN/LRV), ECF No. 14 (granting TRO directing Amazon.com to freeze all funds involving defendants' accounts); TRO Order, *Thousand Oaks Barrel Co., LLC v. The Partnerships, etc.*, No. 1:24-cv-0958 (E.D. Va. Jun. 21, 2024) (MSN/LRV), ECF No. 20 (granting TRO directing Amazon.com and Etsy.com to freeze all funds involving defendants' accounts); Preliminary Injunction Order, *Shenzhen Ke Xiu Technology Co. Ltd, v. The Unincorporated Ass'ns*, No. 1:24-cv-1465 (E.D. Va. Aug. 21, 2024) (CMH), ECF No. 24 (granting preliminary injunction directing Amazon.com and Temu.com to freeze all funds involving defendants' accounts);  Order, *Juul Labs, Inc. v. Unincorporated*

*Ass'ns*, No. 1:19-cv- 01126 (E.D. Va. Sept. 13, 2019), ECF No. 25 (granting TRO directing PayPal to freeze all funds involving defendants' accounts).

### A.    <u>Standard for Temporary Restraining Order</u>

"The standard for granting either a TRO or a preliminary injunction is the same." *Velasquez v. Velasquez*, No. 1:14CV1688 JCC/TRJ, 2014 WL 7272934, at *3 (E.D. Va. Dec. 15, 2014) (citing *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006)). In deciding whether to grant a TRO or preliminary injunction, the Fourth Circuit follows the test established by the United States Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, whereby the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009) (quoting *Winter*, 555 U.S. 7, 20 (2008)).

The Fourth Circuit has also adopted the four factors in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), which state a plaintiff seeking an injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id*. at 391.

Applying the *Winter* and *eBay* factors to this case compels the grant of Plaintiff's motion and an order narrowly tailored to halt all activity associated with the advertisement and sale of infringing works by the Defendants identified in Schedule A and to enjoin the transfer of any monies held in Defendants' seller accounts until further ordered by this Court.

Plaintiff is likely to succeed on the merits as it has established facts supporting its claims that Defendants use the Copyright Registration without authorization, in connection with the importation, sale, offering for sale, distribution, or advertising of copied infringing goods.

If the *ex parte* Motion is not granted, Plaintiff will suffer irreparable harm. At the case's early stage, "irreparable harm consists of harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits." *Canon, Inc. v. GCC Int'l, Ltd.,* 263 Fed.Appx. 57, 62 (Fed. Cir. 2008) (citing Dan B. Dobbs, *Law of Remedies* 193–94 (2d ed. 1993)). Irreparable harm is generally suffered "when monetary damages are difficult to ascertain or are inadequate," *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,* 22 F.3d 546, 551 (4th Cir. 1994).

Plaintiff was the first to design, photograph, advertise, manufacture, and launch the Magnetic Animal Alphabet, and was granted the Copyright Registration for his efforts. Defendants are copying Plaintiff's copyrighted works, thereby creating a false association in the minds of consumers that the Defendants' Infringing Webstores are sponsored by or endorsed by Plaintiff. Plaintiff is also losing significant sales and market share due to Defendants' activities. The entry of a temporary restraining order is appropriate because it will immediately stop the Defendants from benefiting from their wrongful use of the Copyright Registration and preserve the status quo until such time as a hearing can be held.

Defendants are non-US entities with no other assets in the United States except their online seller accounts. In the absence of a temporary restraining order without notice, the Defendants can and likely will disturb the status quo by modifying content, changing hosts and platforms, and moving any assets from U.S.-based seller accounts to accounts outside the reach of this Court. In addition, courts have recognized that civil actions against infringers present

10

special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

Here, it is a virtual certainty that if any of the Defendants learn about this action before the requested relief is granted, Defendants will expeditiously transfer all funds from their domestic seller accounts to accounts outside of this court's federal jurisdiction, thereby disrupting the status quo and denying Plaintiff of a means to collect upon any judgment it is likely to obtain. Moreover, none of the Defendants will suffer any cognizable harm if the Court grants Plaintiff's motion. As this Court has recognized, the ability of an infringer to reap the profits of prior infringement should not be considered when balancing the hardships. *See Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593 (E.D. Va. 2008). The public interest also weighs heavily in favor of the Court granting a temporary restraining order. Through their actions, Defendants have deceived and continue to deceive consumers into believing that they are purchasing genuine Magnetic Animal Alphabet products when, in fact, they are receiving unauthorized and unlicensed copies, which is creating confusion among consumers. The public will benefit from deterring such activity and preserving the availability of judicial remedies. Such relief has been granted by this Court, as well as from other U.S. district courts around the country. *See, e.g.,* Order*, Volkswagen Group of America, Inc. v. Unincorporated Ass'ns*, No. 1:19-cv-01574 (E.D. Va. Dec. 20, 2019), ECF No. 21; Order *Thousand Oaks Barrel Co., LLC v. The Partnerships, etc.*, No. 1:23-cv-1560 (E.D. Va. Nov. 16, 2023) (MSN/LRV), ECF No. 11 (granting TRO directing Amazon.com to freeze all funds involving defendants' accounts); Order

*Thousand Oaks Barrel Co., LLC v. The Partnerships, etc.*, No. 1:23-cv-1563 (E.D. Va. Nov. 16, 2023) (MSN/LRV), ECF No. 14 (granting TRO directing Amazon.com to freeze all funds involving defendants' accounts); Order, *Thousand Oaks Barrel Co., LLC v. The Partnerships, etc.*, No. 1:24-cv-0958 (E.D. Va. Jun. 21, 2024) (MSN/LRV), ECF No. 20 (granting TRO directing Amazon.com and Etsy.com to freeze all funds involving defendants' accounts); Order, *Shenzhen Ke Xiu Technology Co. Ltd, v. The Unincorporated Ass'ns*, No. 1:24-cv-1465 (E.D. Va. Aug. 21, 2024) (CMH), ECF No. 24 (granting preliminary injunction directing Amazon.com and Temu.com to freeze all funds involving defendants' accounts);  Order, *Juul Labs, Inc. v. Unincorporated Ass'ns*, No. 1:19-cv- 01126 (E.D. Va. Sept. 13, 2019), ECF No. 25 (granting TRO directing PayPal to freeze all funds involving defendants' accounts).

      **B.**      <u>**Plaintiff Will Likely Succeed on the Merits**</u>

Plaintiff is likely to succeed on the merits of its claims for copyright infringement.

      **1.**      <u>**Copyright Infringement**</u>

Plaintiff is likely to prevail on its claims for copyright infringement pursuant to 17 U.S.C. § 101, et seq., for infringement of the Copyright Registration, which protects Plaintiff's images and creative works. *See* Complaint ¶ 13-14, Exhibits A, C.

Defendants in Schedule A of the Complaint have, under 17 U.S.C. § 501, directly from copying the work, infringe Copyright Registration and irreparably harm Plaintiff by using Plaintiff's copyrighted works to advertise, manufacture, and sell copied products into the United States and this District. Compl. ¶ 1, 5, 7, 8.

The preliminary infringement charts in Exhibit C of the Complaint demonstrate that Defendants have illegally copied Plaintiff's copyrighted works in order to sell the same products that Plaintiff manufactures and sells. *Id.* Exhibit C.  The charts were submitted as examples of

each of Defendants' Accused Products, and Plaintiff reserves the right to modify the charts as part of Plaintiff's infringement contentions.  The copied products of the Defendants incorporate the protectable elements of Copyright Registration and even go so far as to use the same or substantially the same color schemes, patterns, and product layouts in the images of their products as the Plaintiff does. The Defendants, without the permission or consent of Plaintiff, have, and continue to sell copied works of Plaintiff. The Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. The Defendants' actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 et seq.) The foregoing acts of copying constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of the Plaintiff.

As a result of the Defendants' infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504 and to Plaintiff's attorneys' fees and costs pursuant to 17 U.S.C. §505.

For the foregoing reasons, Plaintiff is likely to prevail on its claims for copyright infringement.

### C.     Without *Ex Parte* Relief Plaintiff Will Likely Suffer Irreparable Harm

In the context of infringement of a copyright, in *Christopher Phelps & Associates LLC v. Galloway*, the Fourth Circuit held that a copyright plaintiff is not automatically entitled to injunctive relief merely by a showing of infringement and the threat of continuing infringement. *Christopher Phelps & Associates LLC v. Galloway*, 492 F.3d 532, 544 (4th Cir. 2007).  Citing *eBay*, the court held that a copyright plaintiff must put forth sufficient evidence that: (i) the plaintiff has suffered irreparable injury; (ii) the remedies available at law are inadequate to

compensate for injury; (iii) the balance of hardships favors remedy in equity; and (iv) the public interest would not be disserved by permanent injunction. *Id*. The Fourth Circuit also cautioned that, even upon this showing, whether to grant an injunction remains within the "equitable discretion" of the court. *Id*.

Defendants' unauthorized use of the Copyright Registration has, and continues to, irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales as well as resulting from the loss of its lawful copyrights to exclude others from using and selling his copyrighted works. Compl. ¶¶ 27, 29. Prior to the Accused Products entering the market, sales of Plaintiff's products under the Copyright Registration directly or through authorized licensees was about 7000 sets per month. *Id*. ¶ 20. Such sale was reduced to about 3,000 sets per month after Defendants swarmed the market with counterfeit products. *Id*. ¶ 20.

The extent of the harm to Plaintiff's lost sales, lost customers, reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. S*ee Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994). Defendants are selling their Infringing Products on Amazon.com and the other platforms listed in Schedule A to the Complaint, some at a lower price that the Plaintiff charges for its copyrighted version. Such evidence and injury add to grounds for an injunction to issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc*., 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for

14

finding irreparable harm.") (internal quotes and cites omitted); s*ee also, Otter Prods. v. Anke Group Indus. Ltd.*, 13-cv- 00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (Holding TRO was necessary to prevent "irreparable injury…in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX … patents."); *see also, Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ("Absent an *ex parte* temporary restraining order and seizure order, Bestwinn's importation, sale, and/or offers to sell its Flyknit Design Infringements will result in immediate and irreparable injury to NIKE in the form of loss of control over its valuable intellectual property rights, loss of consumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patents.").

In the absence of an injunction, Defendants' infringement of the Copyright Registration is likely to continue to cause consumer confusion with Plaintiff's products, resulting in harm to Plaintiff's reputation and loss of associated goodwill. As the United States Court of Appeals for the Federal Circuit has held: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994); *see also, Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) (quoting and relying on *Reebok* in finding irreparable harm).

A causal nexus exists between Defendants' infringement and each of the irreparable harms that Plaintiff is suffering. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). As shown in the charts in Exhibit C to the Complaint, Defendants' infringing use of Plaintiff's copyrighted works in the Accused Products is a substantial, if not the exclusive,

reason for consumer demand of the Accused Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23- 24 (D. Ariz. Sept. 8, 2015), aff'd, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

Given that Defendants are individuals and entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no real presence in the United States except through their activity on the Amazon.com platform, any monetary judgment is likely uncollectable, unless Defendants' assets in the U.S. are frozen. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, *citing O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* No. 04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'").

For the reasons stated above and in the Verified Complaint, Plaintiff will suffer immediate and future irreparable injury, loss, and damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

**D.    The Balance of Equities Tips Overwhelmingly in Favor of Maintaining the Status Quo By Halting Defendants' Internal Seller Platform Assets Related to the Infringing Activities**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the irreparable harm that Defendants

will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Plaintiff will suffer if relief is denied. In *Christopher Phelps*, the Fourth Circuit held that a copyright plaintiff is not automatically entitled to injunctive relief merely by a showing of infringement and the threat of continuing infringement. *Christopher Phelps & Associates LLC v. Galloway*, Citing *eBay*, the court held that a copyright plaintiff must put forth sufficient evidence that: (i) the plaintiff has suffered irreparable injury; (ii) the remedies available at law are inadequate to compensate for injury; (iii) the balance of hardships favors remedy in equity; and (iv) the public interest would not be disserved by permanent injunction. *Id.* 492 F.3d 532, 544 (4th Cir. 2007). As infringers of a U.S. copyright, Defendants are entitled to little equitable consideration. The situation is analogous to trademark law, "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages derived thereby." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).

Plaintiff therefore requests an *ex parte* freezing of Defendants' assets (seller accounts within the online platforms into which sales proceeds from online sales flow and the product pages selling the Accused Products) that are related to the sales of the accused products so that Plaintiff's right to the status quo and an equitable accounting of Defendants' profits from sales of Accused Products is not impaired. Issuing an *ex parte* restraint on the accounts will help to

assure Defendants' compliance. If such a restraint is not granted in this case, Defendants may

disregard their responsibilities and fraudulently transfer financial assets to overseas accounts

before a restraint is ordered. Specifically, upon information and belief, the Defendants in this

case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets,

which will render an accounting by Plaintiff meaningless.

This Court has the authority to issue a prejudgment asset restraint when plaintiff's Complaint seeks

relief in equity. The Court of Appeals for the Federal Circuit and other district courts around the

country have held affirmatively that a preliminary asset restraining is proper if the defendant is a

foreign company with no assets in the United States.  For example, the Federal Circuit has held

that a forward-looking damages award would not be a meaningful remedy if the defendant does

not have the ability to pay that damages award. See *Robert Bosch, LLC v. Pylon Mfg. Corp*., 659

F.3d 1142, 1156 (Fed. Cir. 2011).

The District Court in Nevada dealt with this same issue under the *Winter* factors[1] for

irreparable harm in a utility patent infringement and is instructive to review.  In *Aevoe Corp. v.*

*Shenzhen Membrane Precise Electron Ltd.*, Case No. 2:12-cv-0054 (D.C. Nev. Jan. 11, 2012), the

Plaintiff-patent holder argued that a forward-looking damages award would be insufficient because

Shenzhen Membrane is a foreign company with no assets in the United States. *Id*. p. 8.  The Nevada

Court held that:

> A plaintiff seeking a preliminary injunction must demonstrate that irreparable
> injury is likely in the absence of preliminary relief." *Enyart v. National Conference of Bar*
> *Examiners, Inc.,* 630 F.3d 1153, 1165 (9th Cir. 2011)(*citing Winter*, 129 S.Ct. at 375).
> "Mere possibility of harm is not enough." *Id*. Typically, monetary harm does not constitute
> irreparable harm sufficient to support a preliminary injunction. *California Pharmacists*
> *Ass'n v. Maxwell*-Jolly, 563 F.3d 847, 851 (9th Cir. 2009). However, a forward-looking
> damages award would not be a meaningful remedy if the defendant does not have the

---

[1] *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 20 (2008).

ability to pay that damages award. See *Robert Bosch, LLC v. Pylon Mfg. Corp*, 659 F.3d 1142, 1156 (Fed. Cir. 2011).

Aevoe argues that a forward-looking money damages award would be insufficient because Shenzhen Membrane is a foreign company with no assets within the United States. Other courts have indeed found that money damages were insufficient in similar patent infringement cases involving foreign infringers. See *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 255–56 (S.D. N.Y. 2006) (granting preliminary injunction where defendant was largely based abroad); *O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*, No. 2011– 1054, 2011 WL 5601460, *10 (Fed. Cir. Nov. 18, 2011) (the likely availability of those monetary payments helps define when harm can be offset by monetary payments); *Robert Bosch*, 659 F.3d 1142, 1155–1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, *citing O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-32, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007), vacated and remanded on other grounds, 521 F.3d 1351 (Fed. Cir. 2008) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"). *Id*.

Plaintiff has shown a likelihood of success on the merits; immediate and irreparable harm suffered because of Defendants' infringing activities. In addition, Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff actual damages, infringer's profits, or statutory damages under the Copyright Act. Accordingly, a TRO and asset restraint are proper.

On information and belief, Defendants have profited through the sale of copied products that are advertises using Plaintiff's copyrighted works, which Defendants primarily purchase and import from factories in China, which infringe Plaintiff's copyrights. Compl. ¶¶ 24-29. It is a virtual certainty that if any of Defendants learn about this action before the requested relief is granted, the Defendants will expeditiously transfer all funds from their online seller accounts, thereby disrupting the status quo and denying Plaintiff a means to collect upon any judgment it is likely to receive.

19

This Court, as well as other courts, has found that an asset freeze is justified under similar circumstances due to the likelihood that an infringer will dissipate funds in accounts that are subject to the jurisdiction of U.S. courts and thereby deprive the plaintiff of an adequate remedy. *See,* Order, *Thousand Oaks Barrel Co., LLC v. The Partnerships, etc.*, No. 1:23-cv-1560 (E.D. Va. Nov. 16, 2023) (MSN/LRV), ECF No. 11 (granting TRO directing Amazon.com to freeze all funds involving defendants' accounts); Order *Thousand Oaks Barrel Co., LLC v. The Partnerships, etc.*, No. 1:23-cv-1563 (E.D. Va. Nov. 16, 2023) (MSN/LRV), ECF No. 14 (granting TRO directing Amazon.com to freeze all funds involving defendants' accounts); Order, *Thousand Oaks Barrel Co., LLC v. The Partnerships, etc.*, No. 1:24-cv-0958 (E.D. Va. Jun. 21, 2024) (MSN/LRV), ECF No. 20 (granting TRO directing Amazon.com and Etsy.com to freeze all funds involving defendants' accounts); Preliminary Injunction Order, *Shenzhen Ke Xiu Technology Co. Ltd, v. The Unincorporated Ass'ns*, No. 1:24-cv-1465 (E.D. Va. Aug. 21, 2024) (CMH), ECF No. 24 (granting preliminary injunction directing Amazon.com and Temu.com to freeze all funds involving defendants' accounts);  Order, *Juul Labs, Inc. v. Unincorporated Ass'ns*, No. 1:19-cv- 01126 (E.D. Va. Sept. 13, 2019), ECF No. 25 (granting TRO directing PayPal to freeze all funds involving defendants' accounts).

For these same reasons, Plaintiff will suffer irreparable harm if Defendants' accounts related to the sales of the Accused Products are not frozen. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct and maintain the status quo.

### E. Public Interest Weighs Heavily in Favor of Granting Injunctive Relief

The Supreme Court's decision in *eBay Inc. v. MercExchange, LLC* articulated a rule for granting injunctions that firmly embedded in the common law public interest consideration. In

*eBay*, the Court rejected the Federal Circuit's "general rule" that "a permanent injunction will issue once (patent) infringement and validity have been adjudged." *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1338 (Fed. Cir. 2005). The Court instead implemented what is called "the traditional four-factor test [for injunctions]," one factor of which requires the patentee to affirmatively show whether "the public interest would . . . be [served or] disserved by a permanent injunction. *Id.* at 391. In *Christopher Phelps*, the Fourth Circuit held that a copyright plaintiff must put forth sufficient evidence to show the public interest would not be disserved by permanent injunction.  492 F.3d at 532, 544.  Here, the public interest would not be disserved by enjoining Defendants' infringement activities, by at least a) preventing the sale of copied infringing products, whereby cheaper, lower quality products enter the market, b) the public interest of upholding copyrights to exclude others from importing, offering, and selling products under Plaintiff's copyrighted works, and c) preventing confusion among consumers of the origin of the goods since the infringement of Plaintiff's copyrights is integral to Plaintiff's reputation and public confidence in authentic products.

The Fourth Circuit has recognized a "public interest in making the infringing misconduct unprofitable." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006). It follows that an order preserving the status quo and ensuring that Defendants cannot shelter their improperly obtained profits from the reach of U.S. courts is in the public interest. In this case, the injury to the public is clear, and the injunctive relief which Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. For the reasons above and those in the Verified Complaint, the public interest weighs in favor of granting injunctive relief.

For all of these reasons and those in the Verified Complaint, it is respectfully submitted

that granting Plaintiff's Motion for Entry of Temporary Restraining Order is in the public interest.

**IV.** **Conclusion**

For the foregoing reasons, Plaintiff requests that this Court issue a temporary restraining order freezing the assets of each of the Defendants' online sales, internal online financial accounts, and product pages related to the unauthorized use of Plaintiff's copyright and grant such further relief as this Court deems proper.


Date: December 15, 2025                          Respectfully submitted,

                                                  ___/s/___Kendal M. Sheets
                                                  Kendal Sheets (VSB No. 44537)
                                                  ksheets@dnlzito.com
                                                  Tel: 703-489-8937
                                                  Joseph J. Zito (*pro hac pending*)
                                                  jzito@dnlzito.com
                                                  Tel. (202) 466-3500
                                                  DNL ZITO
                                                  1250 Connecticut Avenue, NW
                                                  Suite 700
                                                  Washington, DC 20036
                                                  Fax: (703) 997-7534

                                                  *Attorneys for Plaintiff*

22