IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria, Virginia

| | |
|---|---|
| YAN WANG,<br><br>           **Plaintiff**,<br><br>v.<br><br>THE UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>           **Defendants.** | Case No. 1:25-cv-2292 (LMB/WBP) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

Plaintiff Yan Wang ("Plaintiff"), by counsel and pursuant to pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65, hereby moves for a Preliminary Injunction Order against the Defendants Nos. 1-10 identified in Schedule A.

The Court granted a temporary restraining order on December 17, 2025 (ECF Nos. 21-22), and now Plaintiff respectfully requests the Court to convert the temporary restraining order into a preliminary injunction.

**I.      Introduction and Summary of Action**

This action seeks to stop the infringement of, and unauthorized use of, Plaintiff's copyrighted works by Defendants as identified on Schedule A of the Verified Complaint (collectively, the "Defendants") to sell products through online platforms including Amazon.com. In the Verified Complaint, Plaintiff filed against Defendants for copyright infringement of a registered copyright. Compl. ¶ 1. Plaintiff is the owner of the United States Copyright Registration

1

explained and produced in the Complaint. [Docket No. 1] ("the Copyright Registration"). *Id*. ¶¶ 1-2, Exhibit 1.  The Copyright Registration protects the creative works of Plaintiff's copyrighted images *Id*. ¶ 2, Exhibit A. Plaintiff's commercial products are sold in the United States via online platforms since 2021 and this product quickly gained traction, achieving sales of approximately 7000 units per month based on its unique design and positive customer reviews. *Id*. ¶ 13-14.

As stated in the Verified Complaint, the Defendants are importing, promoting, advertising, marketing, distributing, offering for sale, and selling Accused Products through various Internet Stores, namely Amazon.com, that incorporate Plaintiff's copyrighted works, and Defendants advertise their products using copies of Plaintiff's work. *Id*. ¶¶ 5, 6, 15, 23, 26, Exhibit C . The Defendants create Internet Stores and product listings for products that incorporated Plaintiff's copyrighted works, all the while actually selling low-quality, unlicensed, infringing products packaged to unknowing consumers.  *Id*. ¶¶ 6, 27. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope of their copying operations. *Id*. ¶¶ 27. Plaintiff is forced to file these actions to combat Defendants' illegal use of Plaintiff's copyrighted works, as well as to protect unknowing consumers from purchasing low-quality knock-off copies over the Internet. *Id*. ¶ 27.

As is the case with many successful products, after Plaintiff's product became a market success, defendants swarmed the market with copycat versions without Plaintiff's authorization or express written permission. *Id*. ¶¶ 16, 18.

Defendants directly target unlawful business activities towards consumers in Virginia and cause harm to Plaintiff's business in the United States and have caused and will continue to cause irreparable injury to Plaintiff. *Id*. ¶ 17. Defendants are knowingly and intentionally importing, promoting, advertising, marketing, retailing, offering for sale, distributing, and selling

infringing products within this judicial district and throughout the United States. *Id*. Specifically, Defendants employ the user accounts listed in Schedule A to the Verified Complaint (the "Infringing Webstores") in conjunction with the online platform Amazon.com to conduct online sales. *Id.* Through their unlawful actions, the Defendants have infringed and are continuing to infringe Plaintiff's copyright rights. *Id*. ¶ 5, 8.

## II.     Statement of Facts

Plaintiff is a renowned graphic designer and early childhood educator with over eight years of experience in product design and educational content creation. Her work is dedicated to creating innovative learning tools that blend aesthetic appeal to children with pedagogical effectiveness. *Id*. ¶ 12. Since Plaintiff's commercial launch of her copyrighted product in the United States in 2021, the product quickly gained traction, achieving sales of approximately 7000 units per month based on its unique design and positive customer reviews. *Id*. ¶ 14. The success of Plaintiff's product is due in large part to Plaintiff's marketing, promotional, and distribution efforts. Plaintiff has made efforts to protect its interests in and to copyrighted works and obtained the Copyright Registration to protect the creative content of the creative designs. No one other than the Plaintiff's licensees are authorized to manufacture, import, export, advertise, create derivative works, offer for sale, or sell any goods utilizing the artistic aspects of the creative designs without the express written permission of the Plaintiff. *Id*. ¶¶ 15-16.

Defendants have fully interactive websites and marketplace listings on various platforms including but not limited to Amazon.com ("Defendant Internet Stores"). Defendants' target consumers in the United States, including the State of Virginia, and has offered to sell and, on information and belief, has sold and continues to sell infringing products that violate Plaintiff's

intellectual property rights in the Copyright Registration to consumers within the United States, including the State of Virginia. *Id*. ¶ 17.

Defendants' infringement of the Copyright Registration is demonstrated in Exhibit C to the Complaint [Docket No. 1].

Defendants' actions have caused irreparably damaged, and are continuing to irreparably damage, Plaintiff. *Id*. ¶ 20. Plaintiff has not authorized or licensed any party named in this action to advertise, import, offer to sell, or sell products made according to the copyrighted works of Plaintiff. *Id*. ¶ 21-23.

Plaintiff also concluded that the Infringing Webstores are selling Accused Products based on a visual inspection of the products as they appear on the Infringing Webstores, the price at which the Accused Products are being offered for sale, and because Defendants and the Webstores do not conduct business with Plaintiff and do not have the right or authority to use the Copyright Registration for any reason. *Id*. ¶ 2, 24, 28, Exhibit B.

Defendants facilitate sales of Accused Products by designing the Defendant Webstore listings so that they appear to unknowing consumers to be authorized listings, outlet stores, or wholesalers selling Plaintiff's Products and accept payment in U.S. Dollars. *Id*. ¶ 21. Defendants are responsible for gaining profits in sales of infringing products using advertising via copies of Plaintiff's copyrighted works. *Id*. ¶¶ 15, 23.

Due to the nature of Defendants' illegal activities, monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control and damage to Plaintiff's reputation and goodwill. *Id*. ¶¶ 28-29. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Plaintiff's reputation and goodwill by acts of

4

infringement. *Id*. ¶¶ 22, 27-28. Plaintiff's goodwill and reputation are irreparably damaged when Plaintiff's copyrights are misused on goods not authorized, produced or manufactured by the Plaintiff. *Id*. This leads to brand confidence being damaged, resulting in loss of future sales and market share. *Id*. The extent of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable. *Id*. ¶ 29.

Defendants' illegal use of the copyright of Plaintiff further irreparably harms Plaintiff because infringers like the Defendants take away Plaintiff's ability to control the nature and quality of illegal Products. *Id*. ¶¶ 27, 29. Loss of quality control over goods bearing or using Plaintiff's copyrighted designs, and, in turn, loss of control over Plaintiff's reputation, is neither calculable nor precisely compensable. Plaintiff is further irreparably damaged due to a loss of exclusivity of his copyrighted works. When infringers use the Copyright Registration without authorization, the exclusivity of Plaintiff's products, as well as Plaintiff's brand reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales. *Id*. ¶ 16, 23.

Tactics used by Defendants to conceal their identities using alias names on Amazon.com and the full scope of their infringing operations make it virtually impossible for Plaintiff to learn Defendants' true identities. *Id*. ¶¶ 4, 6, 27. Based on previous cases of Webstores that unlawfully use a brand owner's intellectual property rights to sell copied products, when any advance notice of a lawsuit or request for injunctive relief is given to the owner or registrant of a Webstore involved in infringement, the requested relief is rendered ineffective and meaningless, because copyright infringers operate as a proverbial "moving target," beyond the effective reach of rights owners seeking to enforce their rights.

Plaintiff has been unable to uncover the true identities of individuals operating the Defendant stores under aliases since the online platforms do not publish this information to the

public. Even if made public, many of these sellers use multiple fictitious names and addresses to regularly create new stores. This is a common practice among online sellers who offer copied products in order to conceal identities so that the sellers can evade enforcement efforts. *Id*. ¶ 4-6.

Irreparable harm by Defendants' activities also comes from the fact that, if not enjoined, the Defendants can abscond with illegally procured funds from the Defendants' accounts, and the funds will be difficult if not impossible to impossible to recover once removed from the United States. *See* Plaintiff's Motion to Seal Complaint.

Plaintiff will suffer immediate and irreparable injury, loss or damage if infringers are allowed to continue to infringe upon, and profit from, the Copyright Registration. *Id*. ¶¶ 36.

III. **Argument**

    A. **A Preliminary Injunction Extending Relief Already Granted in the TRO Is Appropriate**

Plaintiff respectfully requests that this Court convert the temporary restraining order (ECF Nos. 21-22) into a preliminary injunction to prevent further unlawful conduct by the Defendants. Courts addressing similar allegations of Internet-based intellectual property infringement, including the Eastern District of Virginia, have also issued preliminary injunctions following a temporary restraining order. *See, e.g., Volkswagen Group of America, Inc. v. Unincorporated Ass'ns*, Case No. 1:19-cv-01574-AJT-MSN [ECF 21] (E.D. Va. Dec. 20, 2019) (entering a preliminary injunction against PayPal and/or Alipay accounts associated with online eBay and/or AliExpress marketplaces); *Juul Labs, Inc. v. Unincorporated Ass'ns*, Case No. 1:19-cv-01126-LO-IDD [ECF 47] (E.D. Va. Oct. 11, 2019) (same); *Volvo Car Corp. et al. v. Unincorporated Ass'ns*, Case No. 1:19-cv-00974-LO-MSN [ECF 43] (E.D. Va. Sept. 13, 2019) (same), *Juul Labs, Inc. v. Unincorporated Ass'ns*, Case No. 1:19-cv-00715-LOIDD [ECF 58]

(E.D. Va. July 26, 2019) (same), *Juul Labs, Inc. v. Unincorporated Ass'ns*, Case No. 1:19-cv-00575-LO-IDD [ECF 62] (E.D. Va. June 28, 2019) (same), *Juul Labs, Inc. v. The Unincorporated Associations Identified in Schedule A*, 18-cv-01516-LO-IDD [ECF 45] (E.D. Va. Jan. 15, 2019) (same); *Juul Labs, Inc. v. The Unincorporated Associations Identified in Schedule A*, 18-cv-01382-CMH-TCB [ECF 44] (E.D. Va. Dec. 14, 2018) (same); *Juul Labs, Inc. v. The Unincorporated Associations Identified in Schedule A*, 18-cv-01287-LO-IDD [ECF 48] (E.D. Va. Nov. 14, 2018) (same); *Juul Labs, Inc. v. The Unincorporated Associations Identified in Schedule A*, 18-cv-01207-LO-IDD [ECF 39] (E.D. Va. Oct. 17, 2018) (same); *Volvo Car Corp. et al v. The Unincorporated Associations Identified in Schedule A*, 18-cv-00977-LO-MSN [ECF 49] (E.D. Va. Oct. 4, 2018) (same); *Juul Labs, Inc. v. The Unincorporated Associations Identified in Schedule A*, 18-cv-01063-LO-IDD [ECF 45] (E.D. Va. Sept. 12, 2018) (same); *Volkswagen AG, et al v. The Unincorporated Associations Identified in Schedule A*, 17-cv-970-LMB-IDD [ECF 59] (E.D. Va. Jan. 8, 2018) (same); *Volkswagen AG et al. v. Unincorporated Ass 'n, et al.*, Case No. 17-cv-01413 [ECF 59] (E.D. Va. Jun. 8, 2018) (same); *Global Tel-Link Corp. v. Jail Call Servs., LLC*, No. 1:14-CV-1557, 2015 WL 1936502, at *2 (E.D. Va. Apr. 28, 2015); *Microsoft Corp. v. John Does 1-8*, No. l:14-CV-811 [ECF No. 33] (E.D. Va. July 15, 2014); *Microsoft Corp. v. Does 1-18*, No. l:13-CV-139 LMB/TCB [ECF No. 38] (E.D. Va. Feb. 13, 2013); *Chanel, Inc. v. Sea Hero, et al*, 235 F.Supp.3d 1375 (S.D. Fla. Mar. 8, 2016); *True Religion Apparel, Inc., et al. v. Does 1-100*, No. 1:12-cv-9894 [ECF No. 32] (N.D. Ill. Jan. 15, 2013).

      **B.    This Court Has Already Found that the Urgency Requirements for a Preliminary Injunction Have Been Satisfied**

Since the standard for granting a TRO and the standard for granting a preliminary injunction are identical in this Circuit, the requirements for entry of a preliminary injunction

7

extending the TRO have been satisfied. *See, e.g.*, *US. ex rel. $12,642.00 US. Currency v. Com. of Va.*, 2003 WL 23710710, at *1 (E.D. Va. 2003) (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353 (4th Cir. 1991) ("The standard for granting either a TRO or a preliminary injunction is the same.")). A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def Council, Inc.*, 555 U.S. 7, 20 (2008) (*citing Munaf v. Geren,* 55 3 U.S. 674, 689-690 (2008)); R*eal Truth About Obama, Inc. v. Fed. Election Comm 'n*, 575 F.3d 342, 346 (4th Cir. 2009) (reiterating the Supreme Court's standard). By virtue of the Court's entry of the TRO, it has already been found that the above requirements have been satisfied.

### C. The Equitable Relief Sought Remains Appropriate

Plaintiff requests conversion of the TRO to a preliminary injunction to maintain the status quo regarding the accused products. These sales pages and products offered on the Infringing Webstores should remain frozen for the remainder of these proceedings. Additionally, equitable relief sought by Plaintiff is appropriate regarding freezing financial accounts on Internet retail platforms used in connection with the Defendants' infringing activities

Plaintiff requests a preliminary injunction so that the Defendants' account in U.S.-based financial institutions remain frozen. In absence of a preliminary injunction, the Defendants may attempt to move any assets from any accounts now subject to the TRO, where the Court ordered freezing of the infringing products sales, including moving such assets to accounts outside of the jurisdiction of this Court. On information and belief, the Defendants are located outside of the

8

United States and its territories, specifically in China, and have no other assets within the jurisdiction of this Court.  If the status quo is not maintained, and if the Defendants are found liable for copyright infringement in this action, then Plaintiff will have no reasonable ability to collect damages from the Defendants. Therefore, the Defendants' assets should be frozen for the remainder of this proceeding.

Many federal courts, including the Eastern District of Virginia, have granted orders preventing the fraudulent transfer of assets in numerous instances. *See, e.g., Volkswagen Group of America, Inc. v. Unincorporated Ass'ns*, Case No. 1:19-cv-01574-AJTMSN [ECF 21] (E.D. Va. Dec. 20, 2019) (granting a TRO and preliminary injunction ordering PayPal and/or Alipay to freeze funds of defendants); *Juul Labs, Inc. v. Unincorporated Ass'ns*, Case No. 1: 19-cv-0 1126-LO-IDD [ECF 47] (E.D. Va. Oct. 11, 2019) (same); *Volvo Car Corp. et al. v. Unincorporated Ass'ns*, Case No. 1:19-cv-00974-LO-MSN [ECF 43] (E.D. Va. Sept. 13, 2019) (same), *Juul Labs, Inc. v. Unincorporated Ass'ns*, Case No. 1:19-cv-00715-LO-IDD [ECF 58] (E.D. Va. July 26, 2019) (same).

Other courts have found that a forward-looking money damages award would be insufficient because defendants are a foreign companies with no assets within the United States. See *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 255–56 (S.D. N.Y. 2006) (granting preliminary injunction where defendant was largely based abroad); *O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*, No. 2011– 1054, 2011 WL 5601460, *10 (Fed. Cir. Nov. 18, 2011) (the likely availability of those monetary payments helps define when harm can be offset by monetary payments); *Robert*

*Bosch*, 659 F.3d 1142, 1155–1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, *citing O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-32, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007), vacated and remanded on other grounds, 521 F.3d 1351 (Fed. Cir. 2008) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"). *Id.*; *Aevoe Corp. v. Shenzhen Membrane Precise Electron Ltd.*, Case No. 2:12-cv-0054 (D.C. Nev. Jan. 11, 2012).

### D. Plaintiff Will Likely Succeed on the Merits

For the reasons stated above and in Plaintiff's Verified Complaint and Motion for a temporary restraining order, Plaintiff is likely to succeed on the merits of its claims for copyright infringement.

### E. Without Relief, Plaintiff Will Likely Suffer Irreparable Harm

Defendants in Schedule A of the Complaint have, under 17 U.S.C. § 501, infringed the Copyright Registration and irreparably harmed Plaintiff by using Plaintiff's copyrighted works to advertise, manufacture, and sell copied products into the United States and this District. Compl. ¶ 1, 5, 7, 8.

In the context of infringement of a copyright, in *Christopher Phelps & Associates LLC v. Galloway*, the Fourth Circuit held that a copyright plaintiff is not automatically entitled to injunctive relief merely by a showing of infringement and the threat of continuing infringement. *Christopher Phelps & Associates LLC v. Galloway*, 492 F.3d 532, 544 (4th Cir. 2007). Citing *eBay*, the court held that a copyright plaintiff must put forth sufficient evidence that: (i) the plaintiff has suffered irreparable injury; (ii) the remedies available at law are inadequate to compensate for injury; (iii) the balance of hardships favors remedy in equity; and (iv) the public

10

interest would not be disserved by permanent injunction. *Id*. The Fourth Circuit also cautioned that, even upon this showing, whether to grant an injunction remains within the "equitable discretion" of the court. *Id*.

Defendants' unauthorized use of the Copyright Registration has, and continues to, irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales as well as resulting from the loss of its lawful copyrights to exclude others from using and selling his copyrighted works. Compl. ¶¶ 27, 29. Prior to the Accused Products entering the market, sales of Plaintiff's products under the Copyright Registration directly or through authorized licensees was about 7000 sets per month. *Id*. ¶ 20. Such sale was reduced to about 3,000 sets per month after Defendants swarmed the market with counterfeit products. *Id*. ¶ 20.

The extent of the harm to Plaintiff's lost sales, lost customers, reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. S*ee Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994). Defendants are selling their Infringing Products on Amazon.com and the other platforms listed in Schedule A to the Complaint, some at a lower price that the Plaintiff charges for its copyrighted version. Such evidence and injury add to grounds for an injunction to issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc*., 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quotes and cites omitted); s*ee also, Otter Prods. v. Anke*

11

*Group Indus. Ltd.*, 13-cv- 00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (Holding TRO was necessary to prevent "irreparable injury…in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX … patents."); *see also, Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd*., 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ("Absent an *ex parte* temporary restraining order and seizure order, Bestwinn's importation, sale, and/or offers to sell its Flyknit Design Infringements will result in immediate and irreparable injury to NIKE in the form of loss of control over its valuable intellectual property rights, loss of consumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patents.").

In the absence of a preliminary injunction, Defendants' infringement of the Copyright Registration is likely to continue to cause consumer confusion with Plaintiff's products, resulting in harm to Plaintiff's reputation and loss of associated goodwill. As the United States Court of Appeals for the Federal Circuit has held: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc*., 32 F.3d 1552, 1558 (Fed. Cir. 1994); *see also, Tuf-Tite, Inc. v. Fed. Package Networks, Inc*., No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) (quoting and relying on *Reebok* in finding irreparable harm).

A causal nexus exists between Defendants' infringement and each of the irreparable harms that Plaintiff is suffering. *Apple Inc. v. Samsung Elecs. Co*., 735 F.3d 1352, 1364 (Fed. Cir. 2013). As shown in the charts in Exhibit C to the Complaint, Defendants' infringing use of Plaintiff's copyrighted works in the Accused Products is a substantial, if not the exclusive, reason for consumer demand of the Accused Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*,

12

No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23- 24 (D. Ariz. Sept. 8, 2015), aff'd, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

Given that Defendants are individuals and entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no real presence in the United States except through their activity on the Amazon.com platform, any monetary judgment is likely uncollectable, unless Defendants' assets in the U.S. are frozen. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, *citing O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* No. 04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'").

For the reasons stated above and in the Verified Complaint, Plaintiff will suffer immediate and future irreparable injury, loss, and damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

> **D. The Balance of Equities Tips Overwhelmingly in Favor of Maintaining the Status Quo By Freezing Defendants' Internal Seller Platform Assets Related to the Infringing Activities**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the irreparable harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that

Plaintiff will suffer if relief is denied. In *Christopher Phelps*, the Fourth Circuit held that a copyright plaintiff is not automatically entitled to injunctive relief merely by a showing of infringement and the threat of continuing infringement. *Christopher Phelps & Associates LLC v. Galloway*, citing *eBay*, the court held that a copyright plaintiff must put forth sufficient evidence that: (i) the plaintiff has suffered irreparable injury; (ii) the remedies available at law are inadequate to compensate for injury; (iii) the balance of hardships favors remedy in equity; and (iv) the public interest would not be disserved by permanent injunction. *Id*. 492 F.3d 532, 544 (4th Cir. 2007). As infringers of a U.S. copyright, Defendants are entitled to little equitable consideration. The situation is analogous to trademark law, "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages derived thereby." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).

Plaintiff therefore requests continued freezing of Defendants' assets (seller accounts within the online platforms into which sales proceeds from online sales flow and the product pages selling the Accused Products) that are related to the sales of the accused products so that Plaintiff's right to the status quo and an equitable accounting of Defendants' profits from sales of Accused Products is not impaired throughout the remainder of this case. Issuing a restraint on the accounts will help to assure Defendants' compliance. If such a restraint is not granted in

this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). The freezing of assets "is appropriate… because Defendants may otherwise transfer their financial assets to overseas accounts, thereby depriving the Plaintiff of final relief." *See Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). Further, "if…the assets in question ... were profits of the [defendants] made by unlawfully stealing [the plaintiffs' Products and] services, the freeze is appropriate and may remain in place pending final disposition of this case." *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002).

A forward-looking damages award would not be a meaningful remedy if the defendant does not have the ability to pay that damages award. See *Robert Bosch, LLC v. Pylon Mfg. Corp*, 659 F.3d 1142, 1156 (Fed. Cir. 2011). Other courts have indeed found that money damages were insufficient in similar patent infringement cases involving foreign infringers. See *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 255–56 (S.D. N.Y. 2006) (granting preliminary injunction where defendant was largely based abroad); *O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*, No. 2011– 1054, 2011 WL 5601460, *10 (Fed. Cir. Nov. 18, 2011) (the likely availability of those monetary payments helps define when harm can be offset by monetary payments); *Robert*

15

*Bosch*, 659 F.3d 1142, 1155–1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-32, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007), vacated and remanded on other grounds, 521 F.3d 1351 (Fed. Cir. 2008) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"). *Id*.

Plaintiff has shown a likelihood of success on the merits; immediate and irreparable harm suffered because of Defendants' infringing activities. In addition, Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff actual damages, infringer's profits, or statutory damages under the Copyright Act. Accordingly, a preliminary injunction nis proper.

For these same reasons, Plaintiff will suffer irreparable harm if Defendants' accounts related to the sales of the Accused Products are not frozen. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct and maintain the status quo.

E.     **Public Interest Weighs Heavily in Favor of Granting Injunctive Relief**

The Supreme Court's decision in *eBay Inc. v. MercExchange, LLC* articulated a rule for granting injunctions that firmly embedded in the common law public interest consideration. In *eBay*, the Court rejected the Federal Circuit's "general rule" that "a permanent injunction will issue once (patent) infringement and validity have been adjudged." *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1338 (Fed. Cir. 2005). The Court instead implemented what is called "the traditional four-factor test [for injunctions]," one factor of which requires the patentee to affirmatively show whether "the public interest would . . . be [served or] disserved by a

permanent injunction. *Id.* at 391. In *Christopher Phelps*, the Fourth Circuit held that a copyright plaintiff must put forth sufficient evidence to show the public interest would not be disserved by permanent injunction. 492 F.3d at 532, 544. Here, the public interest would not be disserved by enjoining Defendants' infringement activities, by at least a) preventing the sale of knockoff infringing products, whereby cheaper, lower quality products enter the market, b) the public interest of upholding copyrights to exclude others from importing, offering, and selling products under Plaintiff's copyrighted works, and c) preventing confusion among consumers of the origin of the goods since the infringement of Plaintiff's copyrights is integral to Plaintiff's reputation and public confidence in authentic products.

The Fourth Circuit has recognized a "public interest in making the infringing misconduct unprofitable." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006). It follows that an order preserving the status quo and ensuring that Defendants cannot shelter their improperly obtained profits from the reach of U.S. courts is in the public interest. In this case, the injury to the public is clear, and the injunctive relief which Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. For the reasons above and those in the Verified Complaint, the public interest weighs in favor of granting preliminary injunctive relief.

For all of these reasons and those in the Verified Complaint and Plaintiff's Motion for Entry of Temporary Restraining Order, it is respectfully submitted that granting Plaintiff's Motion for a Preliminary Injunction is in the public interest.

### IV. <u>Conclusion</u>

For the foregoing reasons, Plaintiff requests that this Court issue a preliminary injunction that a) converts the TRO to a preliminary injunction, and b) continues to freeze the assets of the

Defendants' webstore accounts within the same scope of the TRO, and grant such further relief as this Court deems proper.

Date: December 30, 2025

Respectfully submitted,

  /s/  Kendal M. Sheets
Kendal Sheets (VSB No. 44537)
ksheets@dnlzito.com
Tel: 703-489-8937
Joseph J. Zito (*pro hac pending*)
jzito@dnlzito.com
Tel. (202) 466-3500
DNL ZITO CASTELLANO PLLC
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Fax: (703) 997-7534

*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record in this case.

    /s/   Kendal M. Sheets
By: Kendal M. Sheets
Virginia bar number 44537